IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2010

STATE OF TENNESSEE v. ANTHONY HALL, ERIC MURRELL, and
ERICA WILLIAMS

Direct Appeal from the Criminal Court for Shelby County
No. 07-09167     W. Mark Ward, Judge

No. W2009-02280-CCA-R3-CD  - Filed November 19, 2010

The defendants, Anthony Hall, Eric Murrell, and Erica Williams were convicted by a Shelby County Criminal Court jury of especially aggravated robbery, a Class A felony. Defendants Murrell and Hall were sentenced to eighteen years and Defendant Williams was sentenced to fifteen years, in the Department of Correction. In this consolidated appeal, the defendants challenge the sufficiency of the convicting evidence. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Anthony Hall; Juni S. Ganguli, Memphis, Tennessee, for the appellant, Eric Murrell; and James M. Gulley (on appeal) and Gary Ball (at trial), Memphis, Tennessee, for the appellant, Erica Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela Fleming and Raymond Lepone, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the robbery of Salif Wane, the victim, during which the victim was shot in the chest and critically injured. The three defendants and three other individuals were indicted on one count of especially aggravated robbery.

**State's Proof**

The victim testified that on May 1, 2007, he had lived in the Bent Tree Apartments for seven months and worked at a flea market selling clothes and shoes. Approximately one year before he moved to the Bent Tree Apartments, the victim was introduced to an individual who went by the name of "Moo,"[1] and Moo helped him sell shoes to her friends. Moo told the victim that she was nineteen years old, and he believed her. Around 11:00 p.m. on May 1, 2007, Moo called and asked the victim to take her to the gas station so she could purchase minutes for her cell phone. The victim obliged and picked up Moo and her friend, "TeeTee,"[2] at the Cazassa Apartments and took them to a gas station. Moo "begg[ed]" the victim for money and said that she was going to call him the following day to bring him customers if she had minutes on her phone. The victim eventually gave Moo money so her phone would not get cut off and also gave her five dollars to give to her friend. The victim said that Moo had asked him to drive her places before, but this was the first time she had ever asked him for money.

Moo and TeeTee went into the store for approximately twenty minutes while the victim waited in the car. Upon their return, the victim drove the young women back to their residence. However, Moo stopped him before he drove away, saying that they could not get in the house because her mother was not home. The victim agreed to take Moo and TeeTee to his house until Moo's mother returned. When they got to the victim's house, Moo "patt[ed]" the victim and asked if he had a gun. The victim was surprised that she would ask about a gun but surmised that was because there had been a recent shooting nearby.

The victim testified that Moo and TeeTee went into the kitchen to prepare a meal, and he went to take a shower. The victim noted that Moo "was texting." While he was in the bathroom, the victim heard Moo "holler" at him and also knock on the door twice. When the victim finished showering, he opened the bathroom door and saw a "light skin" man to his right and the "face of a man[] wearing [a] black shirt." Upon seeing the black shirt, the victim saw flashes coming toward him, then realized he had been shot in the chest. As he laid down on the floor, the victim heard Moo laughing, saying, "[W]e got him, we got him."

The victim testified that he got up, and TeeTee said to him, "[W]e don't know nothing, we don't know what's going on." The victim noticed that the pants he had been holding had been moved, and when he checked the pocket, he discovered that $500 to $600

---

[1]Other testimony later indicated that "Moo" is Karen Munn, who was also indicted in this case but apparently tried separately.

[2]Other testimony later indicated that "TeeTee" is Jamie Felix, who was also indicted in this case.

was missing.  Moo then started crying and called the police.  The victim was taken to the hospital where he had to undergo surgery and stay twenty-four hours.

Officer Clarence Farwell with the Memphis Police Department testified that he was called to the scene of a shooting at the Bent Tree Apartments around 2:30 a.m. on May 1, 2007.  When he arrived, Officer Farwell observed a black male lying on the floor inside the apartment with a gunshot wound to the chest and two females, a Ms. Bell and Ms. Felix, who were "kind of distraught over the incident."  The victim was transported from the scene by ambulance, and the young women informed the officer that unknown suspects had forced their way into the apartment.  One of the young women said that a suspect pointed a handgun at her head.  She said that the suspect forced her to knock on the bathroom door to get the victim out of the bathroom.  The young women informed the officer that once the victim exited the bathroom, one of the suspects fired a shot, striking the victim in the chest.  Neither of the young women told the officer that she was involved in the robbery.  Bell told Officer Farwell that she was nineteen years old, but when she later told him her birthday, it "add[ed] up to" seventeen.  He confronted her with the information, and she said that she had told him she was seventeen.

On cross-examination, Officer Farwell testified that Felix told him at the scene that she was forced to knock on the bathroom door while one of the suspects held a gun to her head.  Felix told the officer that she did not know the identity of the suspects and only provided a vague description.  On redirect examination, Officer Farwell stated that Bell did not name any of the suspects either.

Officer Michael Hill with the Memphis Police Department Crime Scene Unit testified that he responded to the scene in this case where he took photographs inside the apartment, as well as collected some items of clothing and a .380 caliber spent shell casing.

Chris Jamison, an employee of Memphis Communications Corporation, testified that the Bent Tree Apartment Complex was one of his customers in May 2007.  As part of his job responsibilities, Jamison retrieved video footage from the complex's surveillance system showing individuals in the parking lot, and he identified a DVD copy of that footage.

Jamie Felix testified that she was charged with especially aggravated robbery due to her involvement in this case but expected to receive favorable consideration from the State once she testified truthfully.  Felix testified that she participated in the plan to rob the victim on May 1, 2007, along with Karen and Jasper Munn,[3] Defendant Hall, Defendant Williams,

---

[3]At times we will refer to these individuals by first name only to avoid using their entire name in
(continued...)

and Defendant Murrell. Felix said that Defendant Hall went by the name of "Butter," Defendant Murrell went by the name of "Phat," and Karen went by the name of "Moody."

Felix testified that around 11:00 p.m. on April 30, 2007, she walked with Karen to a store near the Spanish Oaks Apartments, also known as the Cazassa Apartments, to pick up some money from the victim, who had driven to the store. When they arrived, the victim took Felix and Karen to a gas station "so he could put some minutes on [Karen's] phone." At the gas station, the victim gave Karen some money and also gave Karen ten dollars to give to Felix, but she let Karen keep it. After Karen purchased minutes for her phone, they went with the victim back to the Spanish Oaks Apartments.

Felix testified that back at the apartment complex, Karen approached her brother, Fred, and asked if he wanted to rob the victim. Fred declined, having just been released from jail, so Karen approached Defendant Murrell and asked him to rob the victim. Karen and Defendant Murrell "disappeared," and when they returned, Karen explained that Defendant Murrell was supposed to rob the victim at knifepoint as he sat in his car, but Karen had stopped Defendant Murrell. Jasper then approached the group and said that he wanted to be involved in the robbery. After some discussion, they decided that they needed someone to hold the gun, so they went to Defendant Williams' apartment and Defendant Williams and Karen talked. Karen and Felix left Williams' apartment and encountered Jasper as they were walking down the stairs. Felix said that "Jasper called [Defendant Williams] and told [Defendant Williams] to come here." At that point, Karen and Felix left the others and got into the car with the victim, who took them to his apartment.

Felix testified that at the victim's apartment, she and Karen went into the kitchen to prepare some food, while the victim was in "the back room." Karen started talking on her phone in the living room, but she briefly handed the phone to Felix and Jasper informed her to pretend that he was her boyfriend so the victim "wouldn't see Karen constantly on the phone." After the phone call, Karen informed Felix that Defendant Williams wanted to see Karen briefly outside. Felix accompanied Karen outside where they met with Defendant Williams, Defendant Murrell, Defendant Hall, and Jasper. Karen informed the others that they needed to enter the first door, the door into the living room, in order to rob the victim.

Felix testified that the victim was in the shower when she and Karen returned to the apartment. Karen went to speak with the victim, while Felix returned to the kitchen to finish cooking. At some point, Felix noticed that Defendants Murrell and Hall had come into the apartment and Defendant Williams was standing in the doorway wearing an unfamiliar coat

---

[3](...continued)
each reference. We intend no disrespect by this procedure.

and holding a bag that was supposed to have had a gun in it. Defendant Murrell joined Felix in the kitchen, and Jasper and Defendant Hall stayed in the living room with Karen. Felix heard someone tell Karen to knock on the door to get the victim to exit the bathroom. Felix saw Defendant Hall, armed, kneeling down on the floor outside the bathroom door and Jasper standing at the bathroom door with a gun pointed toward the door. When the victim opened the door, Felix heard a shot, and everyone except her and the victim ran out of the apartment.

Felix testified that Karen returned inside the apartment and was smiling. Defendant Murrell also came back in the apartment and asked Karen where the victim's money was located. Karen replied that it was in the pocket of the victim's pants, and Defendant Murrell "went to the bathroom and got the pants, and got whatever it was he got out of it[,]" and left. Felix checked on the victim, and he got up on his knees and reached for his pants. After discovering that there was nothing in his pocket, he asked Karen how the robbers got in the house to which she did not respond. The young women called the police, and Felix tried to stop the victim's blood flow until the police arrived.

Felix admitted that she did not tell the police what had happened when they arrived on the scene and had, in fact, lied to them. However, she later told them the truth and who all was involved. Felix said that she had not known Karen very long before the incident. Felix thought that Karen was eighteen years old, but she did not know her exact age. Felix had known Defendant Hall "for a minute . . . [because] [she] used to associate with one of his cousins," and she knew that he lived at the Bent Tree Apartments. She had known Defendant Williams for several years, and Defendant Williams was living with her at the time. The surveillance video from the apartment complex was played for Felix. On the video, Felix recognized Defendants Williams and Murrell, but she could not identify the other two individuals from the videotape. However, by the process of elimination, Felix knew that it was Defendant Hall and Jasper who arrived at the victim's apartment with Defendants Williams and Murrell.

On cross-examination, Felix admitted that Defendant Hall was not present when Karen initiated the plan at the Spanish Oaks Apartments to rob the victim, and the first time she saw him that night was when she and Karen briefly met the group outside of the victim's apartment. On further cross-examination, Felix admitted that she lied to the police the night of the incident by telling them, among other things, that several men she did not know had barged into the victim's apartment and that one of the men held a gun to her head in the kitchen and told her to be quiet. Felix said that she had never called herself "TeeTee" and that Karen went by "Moody," not "Moo." Felix stated that Defendant Murrell had a gun, which he kept pointed down, when he stood with her in the victim's kitchen while Defendant Hall and Jasper stood armed outside the bathroom door.

Ramona McCray, Jamie Felix's mother, testified that she learned of Felix's arrest through Defendant Murrell, who came to her house around 2:00 a.m. after the incident and told her son what had happened. She personally talked to Defendant Murrell the following day, and he told her that "[he was] sorry that [her] daughter got into this trouble. . . . [S]he didn't have anything to do with it. . . . [I]t was Karen, Jasper, and everybody else that planned this[.] . . . [He was] going to turn [him]self in as soon as they g[o]t the shooter."

McCray stated that a couple of hours after she talked to Defendant Murrell, Defendant Hall called her and said the same thing about Felix having nothing to do with the incident and that he was going to turn himself in after the shooter was caught. Defendant Hall proceeded to call her three to four times a day for two to three weeks, and she also saw him on a couple of occasions stealthily going into his mother's house. McCray informed the police of her conversations with and observations of Defendant Hall. Defendant Hall was not arrested until almost two months after the incident.

McCray testified that she saw Defendant Williams less than a week after the incident, and Defendant Williams was wearing a hooded sweatshirt "[t]rying to cover herself up so . . . nobody [would] recognize her" because the police were looking for her. McCray said that she asked Defendant Williams about what had happened, and Defendant Williams used curse words to say that it was not any of McCray's business. Afterward, McCray called the police and informed them of Defendant Williams' whereabouts.

Detective Michael Rosario with the Memphis Police Department testified that he was involved in the investigation in this case and, during the course of his duties, interviewed Defendant Williams in the presence of her guardian. Defendant Williams gave a statement, which was reduced to writing, in which she admitted to participating in the robbery of the victim. She said that she was not armed and did not receive anything from the robbery. She stated that "[she] just did [her] part and left. [She] didn't see any money or nothing."

In her statement, Defendant Williams explained that "Moody and Nicky"[4] initially approached her about "do[ing] something" but did not tell her what. She met Karen, Felix, and Jasper outside, then Karen and Felix left. Jasper informed her that they were going to rob the victim. Defendant Williams told Jasper that she did not want to be involved, but "he mugged [her]" and told her that Karen and Felix were waiting on her. Jasper gave her a bag to carry, and they went to the Bent Tree Apartments. Defendant Williams explained that she did not want to walk back by herself, so she "went with the flow and went with them." She was told that the bag had a gun in it, and one of the others took the bag and she served as a lookout. The others went inside the victim's apartment "a couple of times because they

_____

[4]Apparently, "Moody" is Karen Munn and "Nicky" is Jamie Felix.

-6-

didn't know what to do [and] [b]y the time the gun went off, [she] had walked off and . . . kept on walking."

In her statement, Defendant Williams said that it was Karen and Felix's idea to rob the victim. She said that Jasper was the one who took the gun from her when they got to the victim's apartment, and she assumed it was Jasper who shot the victim "[b]ecause he was the only one that had a gun that [she] knew was his." She participated because she did not want to walk home by herself.

Sergeant Daniel Switzer with the Memphis Police Department testified that he participated in the investigation in this case and, within a few hours of the incident, came into contact with Jamie Nicole Felix and Karen Bell, who also went by the last name of Munn. Both young women were initially thought to be witnesses, but after speaking to them briefly, he "became suspicious of the statements they were giving." Felix was the first to change her story, and Karen's story changed after she was confronted with the statement given by Felix.

Sergeant Switzer testified that they began actively looking for four other individuals in response to the information learned from Felix and Karen. Jasper[5] and Defendants Williams and Murrell were taken into custody within a week of the robbery, but Defendant Hall was not taken into custody until several months later. Sergeant Switzer interviewed Defendant Murrell, and he gave a statement which was reduced to writing. In his statement, Defendant Murrell admitted that he participated in the robbery of the victim. He said that he was not armed, but that Jasper was armed and was the one who shot the victim. Defendant Murrell admitted that he took a watch and $300 to $400 during the robbery. He said that he took the watch from the victim's entertainment center as they were walking through the apartment before the victim exited the bathroom. He explained that the money fell out of the victim's pants when the victim opened the bathroom door and started to swing his arms "in self-defense." Asked why he participated, Defendant Murrell said, "I'm clueless. I don't even know. I was going down there to check on Nicky for sure." Sergeant Switzer stated that the only money recovered in this case was $90 from Jasper.

On cross-examination, Sergeant Switzer stated he ascertained that Karen was fifteen years old at the time of the offense. He said that Defendant Murrell never told him that he had a knife that night or that he had planned to rob the victim outside the Spanish Oaks Apartments. Sergeant Switzer clarified the chain-of-events stated by Defendant Murrell that Jasper and the victim were fighting, money fell out of the victim's pocket, and then the victim got shot.

---

[5] Jasper Munn is also referred to as Jasper Bell.

Sergeant Scott Reed with the Memphis Police Department testified that he interviewed Defendant Hall during the course of his duties in this case. Defendant Hall gave a statement, which was reduced to writing, admitting that he participated in the robbery. Defendant Hall said that he was not armed, but Jasper was armed and was the one who shot the victim. He stated that he did not know what was taken in the robbery, and he did not receive any proceeds from the robbery. Defendant Hall explained his participation as follows:

> I was outside my baby[']s mother's house and I [saw] Jasper and he said that [his] little sister [was] in the house with the [victim]. Jasper said that they were about to go in the house and rob the [victim]. Once he told me, I went home, and came back outside, and when I walked over to the [victim]'s house, they had the door open. The [victim] was coming out of the shower and Jasper pulled the gun out on the [victim] and the [victim] charged at Jasper, and that's when the gun went off.

Asked why he participated in the robbery, Defendant Hall replied, "Stupid."

### Defendant Murrell's Proof

Defendant Murrell testified that he was outside of his apartment on the night of April 30, 2007, when he saw Karen Munn and Jamie Felix walking away from Jasper Munn, saying they were going to the store to meet a friend. Thirty to forty minutes later when the young women returned, Defendant Murrell was outside of his apartment again and heard Karen tell Jasper that she was going to spend the night at a man's house in the Bent Tree Apartments. Meanwhile, Defendant Murrell approached the victim, who was sitting in his car, and asked to use a lighter. However, Defendant Murrell did not know that was the victim at that time. Defendant Murrell did not have a knife and did not tell either Felix or Karen that he was going to rob the victim.

Defendant Murrell testified that he returned to the area where Jasper and Fred Munn were "hang[ing] out." He did not hear Jasper plan a robbery, nor did he notice if Jasper was armed. Jasper asked to charge his phone in Defendant Murrell's apartment, then left and returned with Defendant Williams. Jasper started "texting on [his] phone" and asked Defendant Murrell to drive him to the Bent Tree Apartments because Karen "was down there supposed to be frying some chicken." He drove to the Bent Tree Apartments with Jasper in the front passenger's seat and Defendant Williams and Fred Munn in the backseat. Defendant Murrell was not aware that anyone was armed while in the car. He said that he thought they were going to the victim's apartment "to sit back and . . . [eat] fr[ied] chicken and watch a movie and smoke."

At the complex, Karen and Felix came outside to show which apartment they were in. Meanwhile, Jasper saw Defendant Hall outside near his car and went to talk to him. Defendant Murrell said that during this time, there was no talk of a robbery, but Jasper and Defendant Williams got into an argument over Jasper "telling too [many] people about [their] business." He saw Jasper smack Defendant Williams and tell her that she better stay with them. They walked to the victim's apartment and Defendant Murrell went inside "[b]ecause that's where [they] w[ere] supposed to have been going." Inside, Defendant Murrell sat on the couch and did not walk into the kitchen or threaten Felix.

At some point, Defendant Murrell noticed a watch lying on the entertainment center and took it because "[he] wanted the watch." Defendant Murrell said that he heard Jasper and Defendant Hall discussing that Defendant Hall was going to tell the victim that he needed to pay Karen "the money that [he] had promised her or [he] was going to call the police on [him]" because he had her in his apartment. However, as Jasper was walking through the apartment, "[i]t just so happened when the man c[a]me out [of] the restroom, they approached." The victim started "swinging at Jasper" and money fell from the pants the victim was holding, so Defendant Murrell grabbed the money because "[he] wanted the money." Jasper shot the victim about three seconds after Defendant Murrell grabbed the money. Defendant Murrell told Karen to call the police to get help for the victim. He hid the money at a friend's house and did not spend any.

On cross-examination, Defendant Murrell testified that he should have responded "no" when the officers asked him if he participated in the robbery of the victim. He also said that he never told McCray that Felix was not involved in the incident. Defendant Murrell stated that he was not one of the individuals pictured in the surveillance video. He said that Defendant Hall did not have a gun.

**Defendant Williams' Proof**

Defendant Williams testified that she was seventeen years old and in the eleventh grade of high school at the time of the incident. On the evening of April 30, 2007, around 9:00 or 10:00 p.m., she was visiting her friend, Alicia, at the Spanish Oaks Apartments when Karen Munn and Jamie Felix stopped by to talk about tattoos. When Karen and Felix left, Jasper Munn stopped by and they went to an area in the apartment complex to socialize with others. She and Jasper talked for awhile about various things, but not a robbery. She got ready to leave, but Jasper wanted her to get in Defendant Murrell's car so she rode with Jasper Munn and Defendant Murrell to the Bent Tree Apartments. There, Jasper told Defendant Williams that he was going to rob someone and handed her a bag. Defendant Williams said that Jasper would not tell her what was in the bag, and she "was too scared" to tell him to carry the bag himself.

Defendant Williams testified that she told Jasper that she wanted to go home, but [h]e started cussing [her] out . . . [and] [she] was just scared to leave." She said that Jasper "kept mugging [her] and . . . slapped [her]. So [she] was actually scared then." Defendant Williams explained that "mugging" meant that "he pressed on [her] face real hard, like you know, pressing down on [her] face." Defendant Hall joined the group, Jasper took the bag from her, and they walked to the victim's apartment. However, Defendant Williams never went inside the apartment. While she was standing outside, Defendant Williams heard a shot, and she walked off. Defendant Williams stated that she stayed at her sister's house from the time of the offense until she was arrested six days later. She said that she did not consider herself a "lookout" during the offense; she was just following Jasper's orders to stand by the door. She stated that she participated in the robbery because she was scared of what Jasper would do to her.

On cross-examination, Defendant Williams admitted that Jasper told her about the plan for the robbery before she got into Defendant Murrell's car and they left the Spanish Oaks Apartments. She also admitted that she did not tell the police that Jasper "mugged" her twice – once while still at the Spanish Oaks Apartments and once when they were at the Bent Tree Apartments. She said that she did not see the gun Jasper used and only described it to the police as "black" because that was the only color of gun she had ever seen. She also said that contrary to Defendant Murrell's statement, she did not return with Jasper to the Spanish Oaks Apartments. Defendant Williams recalled that Defendant Murrell told her that he had a strap, so she thought that he might have had a gun that night. However, she acknowledged on further cross-examination that "strap" could also refer to a condom.

After the conclusion of the proof, the jury convicted the three defendants as charged of especially aggravated robbery.

## ANALYSIS

The defendants all challenge the sufficiency of the convicting evidence. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.

State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Especially aggravated robbery is robbery accomplished with a deadly weapon and where the victim suffers serious bodily injury. Id. § 39-13-403(a). A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Id. § 39-11-402(2).

In challenging the sufficiency of the convicting evidence, Defendant Murrell argues that the victim did not identify him as one of the robbers, the security camera footage did not provide a clear view for the jury to see any of the individuals' faces, Felix's testimony that implicated him in participating in the planning aspect of the robbery was untrustworthy, and the items he stole from the victim were taken before the victim was shot. Defendant Williams argues that there was no evidence that she intentionally or knowingly planned to rob the victim and that she was intimidated by Jasper Munn into going with them to the victim's apartment, where she remained outside, and holding the backpack that she did not know contained a gun. Defendant Hall argues that he was not involved in the planning of the robbery, did not receive any proceeds from the robbery, and Felix's testimony that he was armed was untrustworthy.

-11-

In the light most favorable to the State, the evidence shows that Karen Munn, Jasper Munn, Jamie Felix, and Defendant Murrell discussed robbing the victim. They discerned the need for someone to carry a gun, and Karen and Felix talked with Defendant Williams about "doing something." Jasper soon thereafter informed Defendant Williams of the plan to rob the victim and gave her a bag containing a gun. Meanwhile, Karen and Felix left with the victim to go to his apartment. Defendant Murrell, Defendant Williams, and Jasper drove to the victim's apartment complex in Defendant Murrell's vehicle where they met Defendant Hall and Jasper informed him of the plan to rob the victim. The four briefly rendezvoused outside of the victim's apartment with Karen and Felix for Karen to inform them of which door they needed to enter. At some point, Jasper took the bag containing the gun from Defendant Williams. Karen and Felix returned inside the apartment and the others soon after entered the apartment, while Defendant Williams stood at the door serving as a lookout. Defendant Hall kneeled down next to the bathroom door and Jasper stood in front of the bathroom door, both of them armed with a weapon, as Karen knocked on the bathroom door trying to get the victim to exit. Upon the victim's opening the door, Jasper shot him and Defendant Murrell removed the cash from the pants the victim had been holding.

During the investigation, the three defendants admitted to the authorities that they participated in the crime along with the other individuals. Specifically, Defendant Williams told the police that she "went with the flow and went with them" and that "[she] just did [her] part and left." Defendants Hall and Murrell both told Ramona McCray, Felix's mother, that they were involved in the crime and were going to turn themselves in to law enforcement once the shooter was caught. The jury obviously accredited Felix's and the other State's witnesses' testimony and discredited Defendant Murrell's and Defendant Williams' testimony regarding their lack of involvement in the crime, in particular, Defendant Williams' allegations of coercion and Defendant Murrell's assertion that he thought they were going to the victim's apartment to "[eat] fr[ied] chicken and watch a movie and smoke." This was the jury's province. Based on this evidence, a rational trier of fact could have determined that the three defendants acted in concert with the other three individuals to commit the especially aggravated robbery of the victim.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE

-12-