IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2011

## STATE OF TENNESSEE v. WALTER THOMAS GODSEY, JR.

**Direct Appeal from the Circuit Court for Chester County**
**No. 10-CR-29     Donald H. Allen, Judge**

**No. W2011-01027-CCA-R3-CD  - Filed December 29, 2011**

The defendant, Walter Thomas Godsey, Jr., was convicted by a Chester County Circuit
Court jury of driving on a cancelled, suspended, or revoked license, a Class B misdemeanor,
and sentenced to six months in the county jail.  On appeal, he challenges the sufficiency of
the convicting evidence and the sentence imposed by the trial court.  After review, we affirm
the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and
JAMES CURWOOD WITT, JR., J., joined.

George Morton Googe, District Public Defender; and Kandi Kelley Collins, Assistant Public
Defender, for the appellant, Walter Thomas Godsey, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney
General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown,
Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted for driving on a cancelled, suspended, or revoked license
after a police officer pulled him over on suspicion he had unrestrained children in his
vehicle.  At trial, Trooper Jimmy Plunk, with the Tennessee Highway Patrol, testified that
he was traveling north on State Route 22 in Chester County on September 6, 2009, when he
observed a red Corsica with unrestrained child passengers traveling south on the same road.
In his rearview mirror, Trooper Plunk saw the car turn onto Willis Road, so he turned around

and caught up to the vehicle on Willis Road at the intersection with Lancaster Road. According to Trooper Plunk, the defendant appeared to have missed a turn and was backing up at the intersection. At the same time, the defendant was "leaning down towards the driver's door."

Trooper Plunk testified that he activated his lights and siren, after which the defendant stopped his car, exited the vehicle, and began walking toward him with something in his right hand. Concerned that the defendant might have a weapon, Trooper Plunk ordered the defendant to drop whatever was in his hand and get on the ground. The defendant complied, and Trooper Plunk determined that the defendant did not have a weapon. Trooper Plunk observed that there were two adults and five juveniles in the car.

Trooper Plunk obtained the defendant's driver's license and checked it through the Tennessee Highway Patrol dispatch. He learned that the defendant's license was suspended, which was a violation of the law. He believed that the defendant told him that he was not aware that his license was suspended.

Trooper Plunk testified that he later requested a certified copy of the defendant's driving record from the Department of Safety. The records showed that the defendant's license had been suspended several times in the past and was last suspended in 2007 for failure to satisfy citations. It was suspended for an indefinite period of time and, thus, was in suspended status on September 6, 2009.

Trooper Plunk testified that he determined that the vehicle the defendant had been driving was registered to one of the passengers in the car. However, her license was also suspended so she could not drive the car from the scene. Trooper Plunk stated that he could have cited the defendant instead of arresting him, but he made the decision to arrest the defendant because of his driving history.

The defendant testified that he was not attempting to evade Trooper Plunk but had missed his turn and was backing up when he saw the trooper's blue lights behind him. He said that Trooper Plunk took him into custody and transported him to the jail. He stated that Patty Gilmore was with him in the car but that she could not drive the car home from the scene because her license had also been suspended. The car was registered to Patty Gilmore's ex-husband, Alton Gilmore.

The defendant acknowledged that he was in fact driving when Trooper Plunk pulled him over but said that he did not know his license was suspended. He explained that his license had originally been suspended over a ticket in Chester County. He said that he had paid the ticket, showed proof of insurance, and received his license back. The defendant

claimed that he had paperwork to show that he had paid his reinstatement fees in order to get his license back, and he believed his license was reinstated on October 10, 2006. However, his license was evidently re-suspended in 2007 over the same ticket "for an insurance," of which he was not aware when he was pulled over. He maintained that he did not "knowingly" drive on a suspended license.

The defendant testified that he still did not have a driver's license. In order to get his license back, he had to show proof of insurance in Chester County and pay for a ticket in Selmer. He said that he had paid for the Selmer ticket but "ha[d] not carried it to reinstate on them yet." He thought that he received the ticket in Selmer prior to his arrest in this case. He explained that he got the ticket in Selmer because he was driving someone else's car and that person did not have insurance on the vehicle. He thought that the owner of the car had paid for the ticket, but he had not so the defendant paid for it.

The defendant stated that he could not have his license reinstated until he got "everything cleared up," which also included paying a $300 reinstatement fee. He could not presently afford to pay the reinstatement fee or afford insurance. He acknowledged that his license had been suspended several times in the past and that he was aware of the process for getting it reinstated.

After the conclusion of the proof, the jury convicted the defendant of driving on a cancelled, suspended, or revoked license.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence, arguing that, at the time of the stop, he did not know that his license had been suspended. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754

S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 55-50-504(a)(1) provides:

> A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public for purposes of vehicular travel, or the premises of any shopping center, manufactured housing complex or apartment house complex or any other premises frequented by the public at large at a time when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor.

In the light most favorable to the State, the evidence shows that Trooper Plunk stopped the defendant on September 6, 2009, based on the suspicion the defendant had unrestrained child passengers in his vehicle. Trooper Plunk contacted the Tennessee Highway Patrol dispatch and learned that the defendant's driver's license was suspended. He later obtained a certified copy of the defendant's driving history from the Department of Safety and confirmed that the defendant's license had been suspended indefinitely in 2007 for failure to satisfy citations. Therefore, the defendant's license was suspended on the day of the stop.

-4-

The defendant does not deny that he was driving on September 6, 2009, or that his license was in fact suspended at the time. He only argues that he did not *know* that his license was suspended. However, this court has previously held that the offense of driving on a cancelled, suspended, or revoked license does not require any culpable mental state. This same argument has previously has been made to and rejected by this court. See State v. Richard Ferrell, No. M2009-01175-CCA-R3-CD, 2010 WL 27886, at *3 (Tenn. Crim. App. Jan. 7, 2010) (Tenn. Code Ann. § 39-11-301(b), setting out when proof of a culpable mental state is required, applies to Title 39 of the Code and not to Title 55, which sets out the proscription against driving on a revoked license), perm. to appeal denied (Tenn. May 20, 2010). Accordingly, this argument is without merit.

## II. Sentencing

The defendant argues that the trial court imposed an excessive sentence in that the court denied his request for an alternative sentence and ordered that he serve his six-month sentence in jail.

The trial court conducted a sentencing hearing, at which the State relied on a certified copy of the defendant's driving history. The fifty-one-year-old defendant testified that he lived in McNairy County and was trying to start an auto repair business from his home. He said that he needed to work from home because his wife suffered from seizures and that they had a three-year-old child at home. His wife received a disability check, which was their family's sole source of support aside from his occasional auto repair work. He said he had not had a full-time job since being released from prison fifteen or twenty years earlier, claiming that no one would hire him.

The defendant elaborated that he received a fifteen-year sentence in Mississippi in 1979 or 1980, when he was twenty or twenty-one years old, after he pled guilty to accessory after the fact to kidnapping and murder. While on parole for the Mississippi offense, he was arrested in Tennessee for auto theft for which he served a five-year sentence. He explained that his uncle had told him he could use a vehicle but then had reported it stolen. He said that he had not had any "run-ins with the law" since then aside from traffic or driving offenses. He acknowledged that his license had been suspended numerous times in the past, but he thought his license was valid the day he was arrested.

The defendant testified that he would be a good probationer if the court granted him probation and that he was throwing himself at the mercy of the court. He said that he would report as scheduled and would do the best he could to pay any fines. He stated that he did not have a drug or alcohol problem.

In sentencing the defendant, the trial court considered the circumstances of the offense and noted that the defendant admitted he was driving that day and that the proof was overwhelming that his license was suspended. The court observed that the defendant's license had been suspended and revoked "numerous times out of numerous counties" and that "his driving history's not good." The court stated that the defendant had multiple traffic infractions for which he failed to pay the citations and show proof of insurance. The court noted that the defendant had a "total disregard for the traffic laws of this state."

The trial court gave great weight to the defendant's prior convictions, stating that the defendant had a conviction in 1997 for driving on a revoked license as well as two prior serious felony convictions. The court noted that the defendant committed one of the felonies while on parole for the other. The court also noted that the defendant had not "had a regular job" since 1989 or 1990 and had not "really put forth an effort to hold a job." The court determined, considering the defendant's prior criminal record and "extensive driving history" that the proper sentence was six months in the county jail at 75% release eligibility. The court found that the defendant was not an appropriate candidate for probation due to his extensive criminal history.

Appellate review of misdemeanor sentencing is *de novo* on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d), -402(d). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Cmts.

The trial court is afforded considerable latitude in misdemeanor sentencing. See, e.g., State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). When imposing a misdemeanor sentence, the trial court is not required to conduct a sentencing hearing, but it must afford the parties a reasonable opportunity to address the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). Moreover, the trial court is not required to place specific findings on the record, State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998), but must consider the principles of sentencing and the appropriate enhancement and mitigating factors in determining the percentage of the sentence to be served in actual confinement. Tenn. Code Ann. § 40-35-302(d). The trial court is authorized to place the misdemeanant on probation either immediately or after a term of confinement. Id. § 40-35-302(e).

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1).

The defendant has failed to show that the sentence imposed by the trial court is improper. The trial court reached its sentencing conclusion based on the defendant's prior history of criminal conduct. The defendant's driving record details numerous prior driving infractions, and he admitted that he had two prior felony convictions – one of which he committed while on parole for the other. Upon our review, we cannot conclude that the trial court exceeded the great flexibility and discretion extended to trial courts in fashioning a misdemeanor sentence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE