IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 6, 2011

## STATE OF TENNESSEE v. JERRY W. ELLIOTT

**Direct Appeal from the Circuit Court for Henderson County**
**No. 10070-2     Donald H. Allen, Judge**

**No. W2011-00030-CCA-R3-CD  - Filed February 10, 2012**

The defendant, Jerry W. Elliott, was convicted by a Henderson County Circuit Court jury of driving under the influence ("DUI"), a Class A misdemeanor, and violations of the open container, financial responsibility, and registration laws, all Class C misdemeanors. He was sentenced to eleven months, twenty-nine days for the DUI conviction and thirty days for violations of the open container and registration laws. He also received fines for each conviction as well as for violation of the financial responsibility law. The trial court separately found the defendant guilty of violation of the implied consent law, for which his driver's license was revoked for one year. On appeal, the defendant challenges the sufficiency of the evidence convicting him of DUI and also argues that his conviction for violation of the implied consent law is improper because the charging instrument is not in the record. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and JEFFREY S. BIVINS, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); George Morton Googe, District Public Defender; and Hewitt Chatman, Assistant Public Defender (at trial and of counsel on appeal), for the appellant, Jerry W. Elliott.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTS

The defendant was indicted on charges of DUI, violation of the open container law, violation of the financial responsibility law, and violation of the registration law, after a state trooper discovered the defendant passed out in his car parked in the right-hand lane of a highway and investigated the situation.

## State's Proof

At trial, Trooper Dewayne Stanford, with the Tennessee Highway Patrol, testified that he was on-duty in Henderson County around 8:00 p.m. on January 24, 2010. Trooper Stanford had received training in DUI detection, including training in field sobriety testing and advanced roadside impaired driving enforcement.

Trooper Stanford testified that he was traveling north on State Route 22 when he saw the taillights of the vehicle in the right lane ahead of him make a sudden swerving movement into the left lane. As he got closer, he saw a white vehicle sitting in the right-hand lane with no lights on, which the other vehicle had swerved around to avoid hitting. He pulled up behind the white vehicle and activated his rear blue lights to warn other vehicles of the danger. When he noticed that the vehicle's tags were expired, he activated all of his blue lights to issue a citation.

Trooper Stanford testified that he approached the white vehicle from the right side, looked in the window, and saw that the driver, the defendant, appeared to be passed out behind the wheel. Trooper Stanford knocked on the window, and the defendant reached over and opened the door, lighting a cigarette. Immediately, Trooper Stanford smelled "the odor of intoxicating beverage" as the defendant spoke to him. He asked the defendant for his driver's license and insurance information, and the defendant provided the license but not the insurance information. Trooper Stanford asked the defendant how much he had to drink, and the defendant responded that he had consumed two beers and taken his prescribed medication, Flexeril, about an hour before the stop. Trooper Stanford located the bottle of Flexeril in the defendant's pants pocket. He also noticed an open container of an alcoholic beverage, with some liquid still inside, on the floorboard of the vehicle. The defendant advised Trooper Stanford that it "was the beer that he was currently drinking . . . [o]r that he had just drank." Trooper Stanford later located an empty beer bottle in the defendant's vehicle that the defendant claimed was a collector's item.

Trooper Stanford testified that the defendant had slurred speech and appeared as though he "was confused, almost scared, as if he had just w[o]ken up." When the defendant got out of the car, he was unsteady on his feet and appeared to be intoxicated. Trooper Stanford decided to have the defendant perform some field sobriety tests, which he recorded with the camera in his patrol car. He administered the horizontal gaze nystagmus test, followed by the nine-step walk and turn test. During the walk and turn test, the defendant fell off the line three times, which was a failure of the test, and then claimed that his leg was hurting. Trooper Stanford next administered a finger dexterity test, which involved touching the thumb to fingertips while counting. The defendant was not able to successfully complete the test.

Trooper Stanford testified that he placed the defendant under arrest for driving under the influence. Based on his training and experience, Trooper Stanford was of the opinion that the defendant "was too impaired to safely operate a motor vehicle in the State of Tennessee." He also cited the defendant for violation of the implied consent law, violation of the open container law, violation of the registration law, violation of the financial responsibility law, and improper parking. Trooper Stanford called one of the defendant's friends, Debra Powers, to come and get the defendant's vehicle.

Trooper Stanford testified that, once the defendant was in custody, he asked him to submit to a blood test. Trooper Stanford thought a blood test would be preferable to a breathalyzer as the breathalyzer would not show the presence of Flexeril, "which would intensify the effects of alcohol in combination with the alcohol." Trooper Stanford read the implied consent form to the defendant and explained that the defendant could possibly lose his license if he refused to submit to the test. The defendant was initially willing to submit to a blood test but later refused. Trooper Stanford elaborated that he took the defendant to the emergency room, and then the defendant "started demanding certain individuals at the hospital treat him, and other individuals that were there, he refused to be treated by them, and became unruly, extremely agitated, and refused to cooperate any further." The defendant refused to even sign the form. The defendant was then taken to the Henderson County Jail.

**Defendant's Proof**

Debra Powers testified that she and the defendant have had an off-and-on romantic relationship for more than thirty years, and she was with the defendant at his house on January 24, 2010, until 5:15 or 5:30 p.m. She did not see the defendant consume any alcoholic beverages, although she was inside the house the majority of the time and the defendant was outside. She acknowledged that she did not know what the defendant did between 5:15 p.m. and 8:00 p.m. She received a call around 7:15 or 7:30 p.m., asking her

to pick up the defendant's vehicle, and her sister drove her to the scene. She was unable to start the defendant's car, so she and her sister pushed it into the fire department parking lot. Powers stated that she had seen the defendant under the influence of alcohol "[n]umerous times" and, when she spoke with him at the scene of his arrest, he did not appear to be intoxicated.

James Coleman testified that he had known the defendant for more than thirty years, and he was staying at the defendant's house on the date in question. He recalled that, when Debra Powers left that afternoon, the defendant was asleep. The defendant woke up around 6:00 or 6:30 p.m. and remained at the house approximately an hour before leaving. Coleman did not see the defendant consume any alcohol between the time he woke up and the time he left. He said that he had never seen the defendant intoxicated in all the years he had known him. Coleman claimed that the defendant was not intoxicated when he left the house that night. He said that the defendant did not have a beer with him when he left. Coleman admitted to having been convicted of a number of theft and shoplifting charges.

After the conclusion of the proof, the jury convicted the defendant of driving under the influence of a drug and/or intoxicant, violation of the open container law, violation of the financial responsibility law, and violation of the registration law. The court then found the defendant guilty for violating the implied consent law, as charged separately from the indictment.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to sustain his conviction for driving under the influence, asserting that the jury erred in accrediting the testimony of Trooper Stanford over the testimony of Debra Powers and James Coleman. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754

S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 55-10-401(a)(1) provides, "It is unlawful for any person to drive . . . any automobile or other motor driven vehicle on any of the public roads and highways of the state while . . . [u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system[.]" It is no defense to a charge of driving under the influence that the offender is a lawful user of the drugs. Id. § 55-10-402.

In the light most favorable to the State, the evidence shows that, when Trooper Stanford encountered the defendant, the defendant was behind the wheel of his car, apparently asleep, and the car was parked in the road. The defendant told Trooper Stanford that he had consumed alcohol and taken Flexeril, a prescription medication, approximately an hour before the stop. The defendant smelled of alcohol, appeared confused, had slurred speech, and was unsteady on his feet. He failed the field sobriety tests. The defendant had an open container of an alcoholic beverage, with some liquid still inside, on the floorboard of the vehicle, which he advised Trooper Stanford "was the beer that he was currently drinking . . . [o]r that he had just drank." Based on his training and experience, Trooper Stanford believed the defendant to be intoxicated. The jury weighed this evidence against the testimony offered by the defendant's long-time girlfriend and friend with a criminal record, claiming that the defendant was not intoxicated. As was its prerogative, the jury

accredited the testimony of Trooper Stanford. Accordingly, we conclude that the evidence was sufficient to sustain the defendant's conviction for DUI.

## II. Implied Consent Law Violation

The defendant argues that the trial court erred in finding that he violated the implied consent law because the record contained no "charging instrument whereby [he] was given notice that he would be charged with the violation of Tenn. Code Ann. § 55-1[0]-406."

Tennessee Code Annotated section 55-10-406 provides:

> Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests. However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol, a drug, any other intoxicant or any combination of alcohol, drugs, or other intoxicants[.]

Id. § 55-10-406(a)(1). Before conducting the test, the police officer "shall . . . advise the driver that refusal to submit to the test or tests will result in the suspension by the court of the driver's operator's license[.]" Id. § 55-10-406(a)(3). If the driver is placed under arrest and, after being advised of the consequences, refuses to submit to either or both tests, the driver "shall be charged with violating this subsection (a)." Id. § 55-10-406(a)(4). "The determination as to whether a driver violated the provisions of this subsection (a) shall be made at the same time and by the same court as the court disposing of the offense for which such driver was placed under arrest." Id. "Any person who violates this section by refusing to submit to either test or both tests, pursuant to subdivision (a)(4), shall be charged by a separate warrant or citation that does not include any charge of violating § 55-10-401 that may arise from the same occurrence." Id. § 55-10-406(a)(6).

The defendant's contention is without merit. Volume six of the technical record clearly shows that the State charged the defendant with violation of the implied consent law by a separate citation as required by the statute. Moreover, the record reflects that Trooper Stanford read the implied consent form to the defendant. Therefore, the defendant's contention that he had no notice "that he would be charged with the violation" has no support in the record. The defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE