Bobby Edward Bolin

*v.*

State of Tennessee.

405 S.W.2d 768.

(*Jackson,* April Term, 1966.)

Opinion filed June 3, 1966.

Petition on Rehearing September 2, 1966.

6

WARREN MILLER and J. E. MADDEN, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and EDGAR P. CALHOUN, Assistant Attorney General, Nashville for defendant in error; and JEWETT MILLER and EDWARD RUCKS, Assistant District Attorneys General, Memphis, prosecuted the case in the trial court.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The parties will hereinafter be referred to as the defendant and the State, as they appeared on the trial court.

The defendant was tried in the Shelby County Criminal Court for the crime of robbery, was convicted and punishment fixed at five years' imprisonment.

Defendant's motion for a new trial was overruled and an appeal has been perfected to this Court, in which the assignments of error are:

I. The evidence preponderates against the verdict of the jury, and there is no evidence to support the verdict.

II. The Court erred in failing and refusing to require the District Attorney General of Shelby County, Tennessee, to produce the written statement of the prosecuting witness given prior to the trial of this cause.

III. The trial court erred in failing to charge the lesser included offense of assault and battery, the indictment having charged that the defendant did by force and violence make an assault on the witness. It was, therefore, error on the part of the court by its failure to charge the lesser included offense.

IV. The court erred in charging, as follows:

"The law says that the defense of an alibi should be received by the jury discreetly and cautiously because it is a defense that is easily manufactured or fabricated."

This portion of the charge directed the jury to be suspicious of any witness that may testify for the

defendant, and in effect is a comment on the weight of the evidence and directs the jury to require more proof than is ordinarily required in criminal cases.

V. The court erred in failing and refusing to grant the defendant's motion for a mistrial on the ground that the term "Alias Bobby Bowlin" should have been stricken from the indictment as requested by the defendant.

VI. The conduct of the District Attorney General was such as to influence the jury in that the Attorney General accused the defense counsel of "chicanery" during the course of the trial, and such accusation prejudiced the jury toward the defendant so as to prevent his having a fair trial.

VII. The defendant was denied his constitutional rights as a citizen of Tennessee and of the United States in that he was arrested and confined in the police station and was denied the right to use the telephone and during such confinement was interrogated by the police department without being advised of his rights not to make a statement and to have assistance of counsel.

The assignments of error necessitate a recitation of the following facts as they appear in the record of the trial of this cause.

From the testimony of the victim of the robbery in question it appears that on the afternoon of March 3, 1964, he had in his possession some $345.00. He went to a restaurant in Memphis at about dark and there spent the evening visiting with friends.

During the course of the evening the victim was asked by the defendant to buy the defendant a glass of ice and

a soft drink. The victim complied with this request, and as he paid for the items it was possible for the defendant to see some five dollar bills in the victim's billfold. Once during the evening the victim went to the restroom and had removed his shoe in which he had cached some money. The defendant had followed him to the restroom and the victim remarked that his shoe was hurting him; to which the defendant only answered "uh-huh" and left the restroom.

It was near midnight when the victim left the restaurant where the defendant remained. Having walked one block from the restaurant to await a bus, he saw the defendant come from behind some used cars parked in the vicinity. The defendant asked the victim for money and the victim replied that he didn't have any; whereupon the defendant knocked the victim down and commenced stomping and kicking him to the extent that the victim suffered lacerations about the head as well as two fractures about his mandible. One witness who saw the victim testified that he had been beaten fiercely. His glasses were broken; his ear was completely cut through, with one hook of the eyeglasses sticking out of his ear; the bottom plate of his false teeth was broken and blood was coming from his nose and mouth.

Although dazed and apparently semi-conscious, the victim recalls that the defendant took his money and that he was pushed or thrown into a car and taken somewhere and dumped out.

The proprietor of the restaurant recalled seeing the defendant in her restaurant the night of the robbery and identified a picture of the defendant for police officers later as the man who left the restaurant shortly after

the victim left. She testified that the victim was not intoxicated and that he did flash a roll of money before he left about 11:00 or 11:30 p.m. alone.

Memphis policemen answered a call to South Third Street where they found the victim in a beaten condition. At that time the victim told them of the assault and robbery, and that the robber was a man with whom he had been drinking at the restaurant.

The defendant was arrested on March 28, 1964, and held for investigation. On March 30, 1964, the defendant was identified in a lineup by the victim.

An officer of the Memphis Police Department, Robbery Bureau, questioned the defendant on March 29, 1964. The defendant was advised that any statement he made could be used against him. The defendant denied to the officer that he committed the robbery, saying that he went home from the cafe.

It appears that the delay in charging the defendant with the crime—from Saturday to Monday—was because the police department could not find the victim for the identification of the defendant. The defendant was positively identified by the victim on Monday morning and a preliminary hearing was held at 11:00 a.m. that same morning.

The defendant testified in his own behalf that he left the restaurant previously mentioned and that he went to another restaurant and thereafter was in the company of two ladies and another man. This testimony was partially corroborated by one of the ladies.

The first assignment of error is that the evidence preponderates against the verdict. It is insisted in this

regard that the State's witness in chief should not have been believed by the jury in that there were discrepancies in his testimony and that his credibility was questionable.

■■ We must view this contention in the light of the well-settled rule in this State that the verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. Such verdict also removes the presumption of innocence, raises the presumption of guilt and puts upon the defendant the burden of showing that the evidence preponderates against the verdict. *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826; *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173.

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court. *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523.

■ The defendant in the case at bar has not overcome the aforementioned presumption of guilt raised by the verdict of the jury against him. Belief or disbelief of the victim is a decision which is within the jury's exclusive province, and it is obvious from their verdict that they believed the victim and not the defendant. At this appellate level we must adopt this evaluation of credibility as our own in accordance with established and well founded rules of trial and appellate practice.

■ The second contention of the defendant is that the trial court erred in failing and refusing to require the State to produce a statement made by a prosecuting witness. The essential question pertinent to this second contention is whether or not the defendant had any right to have such a statement produced by the State at the trial. In this State the defendant has a statutory right to obtain his *own* written statements or a list of witnesses to any oral statement he may have made which are against his interest pursuant to T.C.A. sec. 40-2441.

This Court has held, in effect, that a Federal statutory right to the prosecution's evidence is not a constitutional right. *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385; *Brenner v. State,* 217 Tenn. 427, 398 S.W.2d 252.

Relevant in our consideration of this assignment is just how this issue arose. Defendant's counsel cross-examined the prosecuting witness at length. In the course of this cross-examination the question arose as to whether or not the prosecuting witness had made a statement to the police. The prosecuting witness testified that he did not remember whether he had or had not made or signed a statement for the police. When one of the investigating officers took the stand, defense counsel asked him if the prosecuting witness had made a statement to him in the course of his investigation, to which the investigating officer gave an affirmative answer, and stated further that any such statements had been turned over to the Attorney General. Defense counsel requested the statement at that time and it was not given to him. The trial judge refused to require the Attorney General to produce the statement, and this refusal is the action of the trial judge assigned as error.

██ It is obvious to this Court on reading the record that there was no suppression of evidence on the part of the Attorney General; the purported suppressed evidence amounting simply to notations which the officers made in the course of their investigation.

This is not the first time this Court has been presented with this issue. In *Gamble v. State,* 215 Tenn. 26, 383 S.W.2d 48, several assignments of error were based upon the failure of the State to produce tape recordings of certain police radio conversations although "radio logs" were produced. Regarding this issue, the late Mr. Justice Andrew O. Holmes said:

"* * * It is also asserted that the Trial Court erred in not requiring the State to make available to counsel for the defendants these tape recordings for use in cross-examining the witness Wilkins, and that the Court was in error in overruling defendant's motion that the Court play back the tape recordings and determine whether or not they contained matters material to the defense of the defendants * * *"

In disposing of the above quoted contention Mr. Justice Holmes said:

"At no time did the defendants obtain a subpoena *duces tecum* and seek to introduce the tapes in evidence at the trial as a part of their proof."

Likewise, in the case at bar the defendant did not attempt to subpoena the statement and use it as a part of his proof. More significantly, we are of the opinion that this evidence was not material to the defense of this cause and therefore find no ground for reversal in this assignment. See also *Brenner v. State,* supra.

The defendant's next contention is that an error was committed when the trial judge did not charge on the law applicable to the lesser included offense of assault and battery. We have faced this same question in *Patterson v. State,* 218 Tenn. 80, 400 S.W.2d 743.

In the Patterson case, supra, we went into the different situations where a charge of a lesser included offense was necessary and when such was not necessary. We pointed out in *Patterson v. State,* supra, that in a fact situation such as that in *Strader v. State,* 210 Tenn. 699, 362 S.W.2d 224, where evidence had been presented at the trial of the cause which permitted an inference of guilt of a lesser included offense, that a charge on the law applicable to each such offense was mandatory. We went on in the Patterson case, supra, to point out that our holding in the Strader case, supra, was limited by its particular facts.

In the Patterson case we held that we would not reverse a verdict on the ground that the trial judge did not charge on the lesser included offenses, because there was no evidence of any lesser offense presented at the trial and therefore the trial judge was not bound to charge the law applicable to lesser included offenses.

In the case at bar we are bound by the Patterson ruling, which we think is well founded; for the sole issue at this trial for the jury to determine was whether or not *this defendant* committed the crime. There was no dispute as to whether or not the robbery occurred and no evidence was introduced from which it could be inferred that no robbery was committed. Accordingly we find no merit in this assignment of error.

The next assignment of error argues that the traditional charge of the court as to the defense of alibi is a comment on the weight of the evidence and, thus, is constitutionally objectionable. The charge of the court is as follows:

"The law says that the defense of alibi should be received by the jury discreetly and cautiously because it is a defense that can be easily manufactured or fabricated."

Learned counsel for the defendant recognizes that we have recently approved of this charge in *Gamble v. State*, supra, but argues that our attention was not called to Article 6, Section 9, of our Constitution, which is as follows:

"Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

In *Gamble v. State*, supra, we expressly approved this charge as not being an invasion of the province of the jury and in conformity with the rules approved by this Court in *Odeneal v. State*, 128 Tenn. 60, 64, 157 S.W. 419; *Warren v. State*, 178 Tenn. 157, 160, 156 S.W.2d 416; and *Bright v. State*, 191 Tenn. 249, 255, 232 S.W.2d 53.

■■ We are of the opinion that our holdings in the above cited cases settle this issue. Any comment on the weight of the evidence by the trial judge would be an invasion of the province of the jury and we have held and so hold now that his charge on alibi does not invade the province of the fact finder. It is a fair charge on the matter of alibi and does not violate Article 6, Section 9 of the Constitution of this State.

■ As to the fifth assignment of error which addresses itself to the fact that the term "alias Bobby Bowlin" was included in the indictment and such should have been stricken therefrom according to the argument of the defendant.

T.C.A. sec. 40-1803 states that an accused person may be indicted "under any name by which he is generally known". Throughout the record the witnesses seem to know the defendant as Bobby Bolin or Bowlin. In his motion for a mistrial the defendant called himself Bobby Edward Bolin. On his beer license the name was Bobby E. Bolin, and the defendant identified himself when he took the stand to testify as Bobby E. Bolin.

Upon this state of the record it appears that the indictment simply uses the defendant's name as accurately as the Grand Jury could determine it to be, and the record shows that the alias was probably more accurate than Bobby Edward Bolin, because most of the witnesses referred to the defendant as Bobby Bolin or Bowlin without a middle initial or middle name, and the court reporter selected the spelling for the record. At any rate there was no plea in abatement for misnomer filed in this case stating the true name as required by *State v. Hughes,* 31 Tenn. 261, and any possible error in not striking the alias is thereby waived.

■ From the record we do not find any merit in the sixth assignment of error.

■ The final assignment of error is to the effect that the defendant was denied constitutional rights because he was confined in the police station from Saturday morning until Monday morning at which time he was identified, charged and taken before a Magistrate. Defendant was

questioned after being advised that any statement he made could be used in a court of law. The defendant did not make any statement against his interest, however.

The record shows that the reason that defendant was held over the weekend was because the police could not find the victim of the robbery. Whether or not the defendant was to be charged with the robbery apparently hinged on whether or not the victim of the robbery identified the defendant as his assailant.

Although there is no confession in this case, a recent opinion of this Court makes several observations pertaining to the detention of an accused before he is taken before a committing Magistrate. In holding that the defendant was not denied constitutional rights by being detained for two days, the following statements from *Van Zandt v. State,* 218 Tenn. 187, 402 S.W.2d 130, opinion for publication, released March 2, 1966, are appropriate:

"The true test, it seems to us, is whether 'fundamental fairness' and 'substantial justice' which, after all, are what is meant by 'due process of law,' under the Fourteenth Amendment, are absent or present."

"* * * A holding of two days, nothing else appearing, does not violate due process or sec. 40-604. *Dupes v. State,* 209 Tenn. 506, 354 S.W.2d 453 (1962); *East v. State,* 197 Tenn. 644, 277 S.W.2d 361 (1955)."

We are of the opinion that the defendant has been afforded the "fundamental fairness" and "substantial justice" due him under the law. We are completely satisfied that he has had a fair trial and accordingly affirm the trial court.

## Opinion on Petition to Rehear

The plaintiff in error through counsel has filed herein a petition to rehear, which in essence raises one or two of the propositions heretofore considered by the Court. We will attempt to reply to these contentions in this opinion on petition to rehear, after having read the petition and the brief that accompanies it as well as reading and rechecking the record.

It is very seriously contended and argued again, as it was in the original brief, that a statement made by the robbery victim should have been furnished the plaintiff in error for the purpose of impeachment. We considered this question at length in our original opinion and for reasons therein stated see no reason now to change our opinion. We determined that this was not error for reasons therein stated, and then arguendo said that this so-called evidence, which was being argued about and which plaintiff in error contends he should have been allowed to introduce, amounted simply to notations which the officers had made in the course of their investigation. It is true there is no statement in this record that this is a fact but when you read the whole record there is simply no other inference that can be drawn from it when the record does not show what this evidence is. It does show that whatever was done was done in this way. In other words, there is a clear inference that this was merely a part of the arrest report which the police had. This assignment on the petition to rehear is basically nothing but a reargument of the proposition which was argued originally.

It is next argued very forcibly that the trial judge committed error when he failed to instruct the jury as to the lesser included offense of assault and battery. We, to

our satisfaction, and the present argument has not varied it in the least, answered this question fully. In answering the question we referred to a rather recent case, *Patterson v. State,* 218 Tenn. 80, 400 S.W.2d 743, which we considered was authority for the position which we felt we were bound to assume in such cases. It is now argued that a previous case of this Court, *James v. State,* 215 Tenn. 221, 385 S.W.2d 86, holds, or as counsel says it is at least the inference of this opinion, that it is the duty of the trial judge to charge all grades of the offense. The *James* case does not so hold and that is not the law. We have repeatedly written on this subject and a number of these cases are referred to in the *Patterson* case, supra. The fact is in the *James* case there is one statement therefrom which negatives this argument. This statement is:

"This does not mean, however, that the trial judge must instruct the jury on the said lesser offense in every indictment for robbery. The holding of this Court is that the trial judge shall so instruct the jury if there is factual evidence which would support a conviction for the lesser included offense."

We are satisfied in the present case that under this record there is no dispute as to whether or not a robbery occurred, and thus the charge was correct. This assignment herein, too, is a reargument of what has been heretofore argued.

It is now argued for the first time, and a long quotation is contained in the petition to rehear regarding a statement that the trial judge made to the jury in the process of the trial, and before the case had been finally concluded and argument heard thereon. This proposition concerns a matter which, as we have said, was not heretofore raised. After the defense was closed the State apparently offered a witness in rebuttal as to certain

statements made by a witness for the defense in an effort to attack the credibility of this defense witness. It was after this that the court told the jury in effect that they should consider prior inconsistent statements as merely going to the weight and credibility of the witness' testimony. The argument as to this statement, which is quoted in the petition to rehear, is that it should be included in writing to the jury so that they could take it to the jury room with them, and consider it just like they do the written charge of the court to the jury, as is required by T.C.A. sec. 40-2516.

█ The statement that the trial judge made here when he ruled on this question is certainly not such a statement as is required to be given in writing to the jury. This Court more than a hundred years ago held that as a general proposition the requirement that the judge's instruction be in writing does not prevent the judge from making oral statements concerning the testimony to the jury during the course of the trial. *State v. Becton,* 66 Tenn. 138. It seems to us that this holding is so absolutely logical and reasonable that it cannot be questioned. Suppose that every time an objection is made to evidence, or a question arises, the ruling of the judge in each instance, and the words he says, would have to be in writing and submitted to the jury thus according to the Code Section last above referred to. To make such a statement is to answer it because of the absurdity of such a proposition. It was never intended that such be done and no holdings anywhere can be found making such a requirement.

After having fully considered the petition to rehear and again re-checking the record, we are satisfied that there is no reversible error herein and the judgment below must be affirmed.