IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2014

**STATE OF TENNESSEE v. EDWARD CARTER**

**Appeal from the Circuit Court for Madison County**
**No. 13-616     Roy B. Morgan, Jr., Judge**

_____

**No. W2014-00538-CCA-R3-CD  - Filed December 30, 2014**

_____

The Defendant-Appellant, Edward Carter, was convicted by a Madison County jury of attempted theft of property valued at more than $500 but less than $1,000, a Class A misdemeanor.  The trial court ordered the Defendant to serve 11 months and 29 days in the county jail, suspended to community corrections.  The sole issue presented for our review is whether the evidence is sufficient to support the conviction.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

George Morton Googe, District Public Defender; and Jeremy B. Epperson, Assistant Public Defender, Jackson, Tennessee, for the Defendant-Appellant, Edward Carter.

Robert E. Cooper, Jr., Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case arises from the sale of a green 1999 Ford Taurus belonging to Joe Bankston to a scrap metal facility without Mr. Bankston's permission.  The Defendant-Appellant, Edward Carter, was subsequently indicted by the Madison County Grand Jury for one count of theft of property valued at more than $500 but less than $1,000, a Class E felony.  See T.C.A. §§ 39-14-103, -105.  The following proof was presented at trial.

**Trial.** Joe Bankston testified that he owned Bankston Auto Sales in Madison County and that he bought and sold automobiles. He became acquainted with the Defendant in 2012 when he sold a car to the Defendant. On the day of the sale, Mr. Bankston agreed to rent office space to the Defendant for $500 a month so that the Defendant could repair vehicles on the premises. The agreement was not reduced to writing. According to Mr. Bankston, the Defendant "stayed there" for about a year and only made four rent payments. It was disputed at trial whether the Defendant also lived at the business.

Mr. Bankston said that in the fall of 2012, he purchased a green 1999 Ford Taurus from Joseph and Renie Reeves for $600. He received the title for the vehicle and placed it on the desk in his personal office. Due to personal and family issues, Mr. Bankston was not frequently at his business around May 2013. As far as he knew, the green Ford Taurus remained on his lot and the title was in his office during that time. On May 29, 2013, Mr. Bankston went to the Madison County Sheriff's Department to report that the car was stolen from his lot that day. Specifically, he spoke with Sergeant Evans, who filed a missing vehicle report.

Mr. Bankston testified that he never gave the Defendant permission to remove the Ford Taurus from his lot and that the Defendant was not present during the transaction with the Reeves. He identified a document titled "Vehicle Bill of Sale" which indicated that "Bankston Auto Sales" sold the 1999 Ford Taurus to the Defendant on May 28, 2013. However, he stated that the signature was not in his handwriting and that he did not use that particular form in his business. Mr. Bankston denied ever selling the vehicle to the Defendant.

On cross-examination, Mr. Bankston denied that the Defendant lived at his business. He also denied that there was an agreement where the Defendant would dispose of cars and Mr. Bankston would receive part of the profits. He stated that he told the Defendant that he had to be on the premises if the Defendant sold a vehicle. He acknowledged receiving money for some of his cars but said he "told [the Defendant] not to do it again." Mr. Bankston denied authorizing previous sales of his vehicles. When asked about the condition of the 1999 Ford Taurus, Mr. Bankston stated:

> It had been in an accident, and the gentleman that I bought the car from had just put a transmission and a[n] engine in the car, so I bought it. It could have been repaired, but I wasn't sure whether I was gonna repair it or whether I was gonna use the motor and transmission and fix two other cars with it that I had that needed work on.

He testified that cars "occasionally" increased in value and that "right now, salvage is going up in value." He acknowledged that the Ford Taurus had been rear-ended but testified that it had "brand new tires on it" and said that he could have repaired it to driving condition.

Sergeant Vatisha Evans of the Madison County Sheriff's Department testified that she investigated Mr. Bankston's missing vehicle report on May 29, 2013. After receiving a call from Mr. Bankston, she went to Hutcherson Metals and found the Defendant and the 1999 Ford Taurus there. The car had already been crushed into scrap metal, and the Defendant provided her with a bill of sale for the vehicle. Sergeant Evans was able to verify that the vehicle identification number (VIN) of the crushed car matched that of the missing vehicle reported by Mr. Bankston. She took photographs of the Ford Taurus, which were entered into evidence.

Ricky Harrison, operations manager at Hutcherson Metals, testified that on May 29, 2013, the Defendant brought a green 1999 Ford Taurus to his facility and presented him with the title. He paid the Defendant $486.40 for the vehicle. Absent a title or bill of sale, Mr. Harrison would not have bought the car. He acknowledged on cross-examination that Hutcherson Metals had purchased multiple vehicles from the Defendant. The first vehicle was sold on August 7, 2012, and the final transaction involved the Ford Taurus on May 29, 2013.

Joseph and Renie Reeves each testified that they previously owned a green 1999 Ford Taurus, which they sold to Joe Bankston for $600 in the fall of 2012 after the vehicle was in an accident. The Defendant was not involved in the transaction. Mr. Reeves testified that the car had 158,000 miles on it and that he had just put a used motor in it. Mrs. Reeves stated that she had signed her name as the "seller" on the back of the car title. She agreed that the Defendant's name was written on the back of the title, but she denied ever selling the car to him on April 20, 2013.

After the State's proof, the Defendant testified on his own behalf. Upon purchasing a car from Mr. Bankston, the Defendant agreed to rent the business and repair several vehicles there. He said that Mr. Bankston wanted to close the business and sell his shop and that they agreed that the Defendant could live on the premises. He said he began to live at Bankston Auto Sales nine months before he was accused of stealing the vehicle in May 2013. The Defendant told Mr. Bankston that there were about 75 cars that were beyond repair and that could be sold as scrap metal to generate income for the business. The Defendant said he had permission to sell the vehicles and that Mr. Bankston asked for $400 per vehicle.

The Defendant stated that the green Ford Taurus had been rear-ended, and he and Mr. Bankston had discussed repairing the car, but they concluded that it should be scrapped. He explained that the car would have cost more to repair than it was worth. He said he signed the title and the vehicle bill of sale with Mr. Bankston's permission. He testified that he sold many

vehicles with Mr. Bankston's consent and that he paid Mr. Bankston for all of them. The Defendant said that they had a disagreement because Mr. Bankston would leave the business without locking the gate, and some car parts were missing as a result. The Defendant responded by changing the locks because he "could not afford to have some looter come in and take [his] stuff." He said that Mr. Bankston then went to the sheriff to report a stolen vehicle.

On cross-examination, the Defendant acknowledged that Mr. Bankston owned the vehicles that were converted to scrap metal. Regarding the Ford Taurus, he denied that he and Mr. Bankston had agreed that the car should be sold as scrap metal. He stated instead that "Mr. Bankston didn't know whether the car was scrap or not. He let [the Defendant] determine whether the car was scrap metal or not." He did not dispute the fact that Joseph Reeves sold the Ford Taurus to Mr. Bankston for $600 in the fall of 2012. The Defendant conceded that he wrote "April 20, 2013" on the back of the vehicle title but testified that "[t]hat's not the intentions of the signing of the title." He agreed that he never received the car from Renie Reeves but denied that he presented false information to Hutcherson Metals. He maintained that the title was not falsified because he received the Ford Taurus from Bankston Auto Sales on April 20, 2013. The Defendant agreed that the "Vehicle Bill of Sale" for the car listed Bankston Auto Sales as the "Seller" and the Defendant as the "Buyer." However, he said that the document reflected that he sold the vehicle for Bankston Auto Sales on May 28, 2013, and not that he purchased it from the business. The Defendant said he had a bill of sale because it was required by Hutcherson Metals.

On redirect examination, the Defendant reiterated that he had Mr. Bankston's permission to sign the bill of sale and the title so he could sell the 1999 Ford Taurus to Hutcherson Metals on behalf of Bankston Auto Sales.

Based on the above proof, the jury found the Defendant guilty of the lesser included offense of attempted theft of property valued at more than $500 but less than $1,000. The trial court subsequently sentenced the Defendant to 11 months and 29 days in the county jail, suspended to community corrections. After the denial of his motion for new trial, this timely appeal followed.

## ANALYSIS

On appeal, the Defendant argues that the evidence is insufficient to sustain his conviction. The State responds that there was ample proof presented at trial for a jury to convict the Defendant of attempted theft. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718,

-4-

729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id. Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

-5-

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)).

Here, the Defendant was convicted of attempted theft of a green 1999 Ford Taurus belonging to Joe Bankston. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Theft of property valued at more than $500 but less than $1,000 is a Class E felony. Id. § 39-14-105(a)(2). Value is defined as "(i) [t]he fair market value of the property or service at the time and place of the offense; or (ii) [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Id. § 39-11-106(a)(36)(A). The jury determines the fair market value of the property "at the time and place of the theft[.]" State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981). "The market value of the article stolen, and not its original cost, is the true criterion when it is necessary to establish the value of the property in order to fix the grade of the offense[.]" Id. at 829 (citations omitted).

As charged to the jury in this case,

A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a)(3). Criminal attempt is an offense one classification lower than the most serious crime attempted. Id. § 39-12-107(a). Therefore, attempted theft of property valued at more than $500 but less than $1,000 is a Class A misdemeanor. See id. § 39-14-105(a)(2).

Viewed in the light most favorable to the State, the proof established that the Defendant knowingly obtained control over a green 1999 Ford Taurus belonging to Joe Bankston and sold the car as scrap metal without the owner's consent. The proof further established that the Defendant acted with the intent to deprive Mr. Bankston of his vehicle and that the Defendant took a substantial step toward doing so. Joseph and Renie Reeves both testified that they transferred the title of their 1999 Ford Taurus to Mr. Bankston for $600 in fall 2012 and that the Defendant was not a party to the transaction. Although the Defendant acknowledged at trial that Mr. Bankston was the lawful owner of the vehicle, the Defendant produced a "Vehicle Bill of Sale" when confronted by Sergeant Evans to reflect that he had purchased the car from

-6-

Bankston Auto Sales. However, Mr. Bankston denied ever selling the Ford Taurus to the Defendant or giving him permission to sell the vehicle to Hutcherson Metals. The Defendant admitted that he altered and presented documents to Hutcherson Metals to sell the Ford Taurus, even though he denied misrepresenting himself to the scrap metal facility. There was ample proof for the jury to find the Defendant guilty of attempted theft of property.

Moreover, there was sufficient evidence for the jury to determine the value of the 1999 Ford Taurus to be more than $500 at the time of the attempted theft in May 2013. Although the vehicle was purchased for $600 in fall 2012 and sold as scrap metal for $486.40 in the spring, the jury could reasonably conclude that the value of the car was over $500 based on its year, condition, and mileage. See, e.g, State v. Michael John Stitts, No. W2011-02673-CCA-R3-CD, 2013 WL 257069, at *5 (Tenn. Crim. App. Jan. 23, 2013) (jury could use its common sense in making its determination of the value of the stolen vehicle given the purchase price and elapsed time) (citing State v. Steven Bernard Sydnor, No. M2007-02393-CCA-R3-CD, 2010 WL 366670, at *20 (Tenn. Crim. App. Feb. 2, 2010), perm. app. denied (Tenn. June 17, 2010); State v. Jeremy Grooms, No. 03C01-9409-CR-00321, 1995 WL 238606, at *2 (Tenn. Crim. App. Apr. 25, 1995), perm. app. denied (Tenn. Aug. 28, 1995)).

In challenging the sufficiency of the convicting evidence, the Defendant contends that because Mr. Bankston's testimony was uncorroborated and because there was evidence of numerous prior transactions in which the Defendant sold vehicles for Bankston Auto Sales, a reasonable jury could not find him guilty based on the submitted proof. However, as we have previously noted, the jury determines the weight and credibility to be given to the testimony of witnesses and reconciles all conflicts in the evidence. Bolin, 405 S.W.2d at 771; Campbell, 245 S.W.3d at 335. Although the Defendant attempted to convey that he was in a conflicted business partnership with Mr. Bankston, the jury considered the Defendant's explanation of the circumstances and rejected it in favor of the prosecution's theory. See Bland, 958 S.W.2d at 659. Moreover, we note that "our duty on appeal of a conviction is not to contemplate all plausible inferences in the Defendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011). We conclude that there was sufficient evidence to establish each element of attempted theft of property valued between $500 and $1,000 beyond a reasonable doubt. Accordingly, the Defendant is not entitled to relief.

## **CONCLUSION**

Upon review, we affirm the judgment of the Madison County Circuit Court.

_____
CAMILLE R. McMULLEN, JUDGE