# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 4, 2016

## STATE OF TENNESSEE v. JAMICHAEL POLK ARMSTRONG

**Appeal from the Circuit Court for Maury County**
**No. 21156    Stella L. Hargrove, Judge**

_____

**No. M2015-02083-CCA-R3-CD – Filed December 5, 2016**

_____

The Defendant, Jamichael Polk Armstrong, was convicted by a Maury County jury of facilitation of sale of cocaine over 0.5 grams in a drug-free school zone and sentenced to ten years in the Tennessee Department of Correction, with the first eight years to be served at one hundred percent release eligibility pursuant to the Drug-Free School Zone Act (hereinafter "the Act"). On appeal, the Defendant claims that the evidence is insufficient to support his conviction and that the trial court erred by applying the Act to his facilitation conviction. Following our review, we affirm the Defendant's conviction but remand for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded for Resentencing**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

L. Samuel Patterson, Columbia, Tennessee, for the Defendant-Appellant, Jamichael Polk Armstrong.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; and Brent Cooper, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This appeal stems from a controlled drug purchase completed by an informant working for the Columbia Police Department. The Defendant was indicted by a grand jury for the sale of cocaine over 0.5 grams within 1,000 feet of a drug-free school zone. A jury trial began on October 10, 2013, at which time the following evidence was adduced.

**Trial.** A confidential informant (CI) working for the Columbia Police Department (CPD) testified that he had purchased cocaine from a man named Michael or "Al" Harding in the past and that he agreed to help the CPD set up a controlled purchase at Harding's house on June 17, 2011. The CI said that Harding did not always have cocaine to sell but that "there was always somebody around that had it." The CI could not remember whether he spoke with Harding on the day of the purchase, but he testified that he "usually did" and that he knew he would be purchasing the drugs from an unknown "black male."

The CI met with officers before the purchase, and he was searched and supplied with a listening device and hidden camera. He then drove to Harding's house in a police-supplied vehicle. There were at least three or four other adults present at the house when the CI arrived. The CI told Harding that he wanted $100 worth of cocaine, and Harding "made the phone call." After the call, the CI "saw the [Defendant] walking up." The CI handed the money to the Defendant, and the Defendant handed the CI the drugs in a cigarette cellophane wrapper. The CI identified a still photograph from the hidden camera, which he said showed the drugs in the Defendant's hand. The CI testified that Harding was sitting next to him during the purchase but that Harding did not participate in the purchase between the CI and the Defendant. The CI identified several other still photographs from the hidden camera, including photographs of the Defendant's face and a photograph of the drugs in the CI's hand. The CI then left Harding's house and drove back to meet the officers. The CI was paid around $120 or $125 for the purchase.

On cross-examination, the CI admitted that he had been charged with possession of crack cocaine a few months before the undercover purchase. He confirmed that his criminal record included convictions for the sale of cocaine, burglary, theft, vandalism, forgery, and probation violation. He had been using cocaine for probably fifteen or twenty years but had been sober since June 2011. The CI also testified that he had mental health issues and struggled with major depression and manic depressive bipolar disorders. He had been paid for participating in between ten and fifteen paid undercover drug purchases with the CPD. He also admitted to using the money to occasionally buy drugs for himself in the past. The CI acknowledged that the video did not show him placing the money into the Defendant's hand.

Officer Jason Dark testified that the CI was used to conduct the undercover drug purchase at Harding's house on June 17, 2011. Officer Dark followed the CI to the area surrounding Harding's house before the purchase, and after the purchase was completed, he followed the CI back to the police department where the officers recovered the drugs the CI had purchased. Officer Dark testified that, before a purchase, officers would search an informant, photocopy any currency they planned to use for the purchase, and

provide an electronic listening device and a camera for the informant. Officer Dark confirmed that if an informant participated in an undercover purchase to help with his own charges he would not also be paid. Officer Dark also testified that he used a computer program developed by the Planning Department of the City of Columbia to determine the distance between the undercover purchase location and the nearby College Hill School,[1] which was 747 feet.

On cross-examination, Officer Dark confirmed that the CI had worked with the CPD in the past as a confidential informant, including a case in May 2011, a few months before the undercover purchase, in which Harding sold to the CI. Officer Dark also confirmed that he was not able to physically observe the transaction between the CI and the Defendant. Officer Dark testified that when he saw the hidden camera video, he immediately identified the Defendant as the man on the video.

Special Agent Glen J. Glenn, a forensic scientist for the Tennessee Bureau of Investigation, testified that he examined the drug evidence in this case. Agent Glenn determined that the substance recovered from the purchase was cocaine base weighing 0.9 grams.

The State rested, and the Defendant did not offer any proof. The Defendant and the State stipulated to the chain of custody regarding the cocaine evidence, and the parties additionally stipulated that the College Hill School is a school within the meaning of Tennessee Code Annotated section 39-17-432.

Based on the above proof, the jury found the Defendant guilty of the lesser-included offense of facilitation of sale of cocaine over 0.5 grams in a school zone, and the trial court affirmed the verdict as the thirteenth juror and set the case for a sentencing hearing. At the February 11, 2014 sentencing hearing, the trial court sentenced the Defendant to ten years as a Range I offender to be served in the Tennessee Department of Correction. The court found that the Defendant was required to serve a mandatory minimum of eight years pursuant to the enhanced penalties section of the Act. The Defendant filed a motion for new trial on February 26, 2014, which was heard and denied on September 14, 2015. This timely appeal followed.

## ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his conviction for facilitation and that the trial court erred in applying the enhanced penalties

---

[1]The parties and witnesses also occasionally referred to the College Hill School as the Horace O. Potter School. To avoid confusion, we refer to this school only as the College Hill School.

of the Act to his conviction. The State responds that the elements of the Defendant's conviction were proven beyond a reasonable doubt; however, the State concedes that the Defendant was not subject to the enhanced sentencing provisions of the Act.

**I. <u>Sufficiency of the Evidence.</u>** First, the Defendant challenges the sufficiency of the convicting evidence. When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. <u>State v. Davis</u>, 354 S.W.3d 718, 729 (Tenn. 2011) (citing <u>State v. Majors</u>, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states that "[f]indings of guilt in criminal actions whether by trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." "Because a verdict of guilty removes the presumption of innocence and raises a presumption of guilty, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009) (citing <u>State v. Evans</u>, 838 S.W.2d 185, 191 (Tenn. 1992)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Sutton</u>, 166 S.W.3d 686, 691 (Tenn. 2005); <u>State v. Hall</u>, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. <u>State v. Campbell</u>, 245 S.W.3d 331, 335 (Tenn. 2008) (citing <u>Byrge v. State</u>, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. <u>Dorantes</u>, 331 S.W.3d at 379 (citing <u>State v. Rice</u>, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this Court shall not substitute its inferences for those drawn by the trier of fact. <u>Id.</u>

The Defendant was convicted of facilitation of sale of cocaine within 1,000 feet of a school. Under Tennessee Code Annotated section 39-11-403, "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a

- 4 -

specific felony, but without the intent required for criminal responsibility under [section] 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." A defendant who has been "charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party." Id. § 39-11-403, Sentencing Comm'n Cmts.

Taken in the light most favorable to the State, the proof showed that the CI arrived at Harding's house to purchase crack cocaine from an unknown "black male." The CI asked Harding to obtain $100 worth of cocaine, and after Harding made a phone call, the Defendant arrived at the house and gave the CI the drugs in exchange for the money. Officer Dark testified that he followed usual procedure to search the informant before and after the purchase and that he followed the CI to and from the purchase location. Officer Dark obtained 0.9 grams of crack cocaine from the CI after the purchase. A video recording and still images from the purchase were admitted into evidence and shown to the jury, and both Officer Dark and the CI identified the Defendant on the video and at trial.

In challenging the sufficiency of the convicting evidence, the Defendant is essentially attacking the credibility of the informant and the weight of the video evidence presented at trial. The Defendant argues that his conviction "is based solely on the identification by a confidential informant who had never met the Defendant" and that "[t]he video evidence in this case does not prove beyond a reasonable doubt that the Defendant is the one who sold the cocaine to the confidential informant." However, as we have previously noted, the jury determines the weight and credibility to be given to the testimony of witnesses and reconciles all conflicts in the evidence. Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966). Furthermore, the record shows that the Defendant was not only identified by the informant, but he was also identified by Officer Dark on the video and at trial.

The Defendant also argues that "[t]he jury obviously discredited the testimony of [the informant]" because the Defendant was convicted of the lesser-included offense of facilitation. However, the jury's verdict for a lesser-included offense, standing alone, does not indicate that the jury completely discredited the informant's testimony. As the State correctly points out, although the informant testified that he purchased the drugs directly from the Defendant and not from Harding, it is possible the jury considered Harding the principal actor of the felony and the Defendant the facilitator. Regardless, no argument is raised regarding the jury instructions, and the jury, in its discretion, found that the Defendant furnished substantial assistance to another person in the commission of the felony. Based on the evidence presented, a reasonable juror could infer from the

video evidence and the witness testimony that the Defendant knowingly facilitated the sale of cocaine. Accordingly, the Defendant is not entitled to relief.

**II. <u>Sentencing Pursuant to the Act.</u>** Next, the Defendant challenges the trial court's decision to sentence him pursuant to the Act. In this case, the Defendant was convicted of facilitation of the sale of more than 0.5 grams of cocaine within 1,000 feet of a school zone. T.C.A. §§ 39-17-417(a)(3), (c)(1); <u>Id.</u> § 39-11-403(b). The trial court enhanced the Defendant's conviction to a Class B felony pursuant to the Act, which provides that "[a] violation of [section] 39-17-417 . . . that occurs . . . within one thousand feet . . . of the real property that comprises a public or private elementary school, middle school, [or] secondary school . . . shall be punished one (1) classification higher than is provided in [section] 39-17-417(b)-(i) for such violation." <u>See</u> T.C.A. § 39-17-432(b)(1). As a Range I offender, the Defendant was subject to a sentencing range of eight to twelve years for his conviction of a Class B felony. <u>See</u> T.C.A. § 40-35-112(a)(2). The trial court sentenced the Defendant to a mid-range sentence of ten years but found that he was required to serve the first eight years of his sentence at one-hundred percent release eligibility under the Act. <u>See</u> <u>id.</u> § 39-17-432(c). The Act provides that a defendant who violates or conspires to violate Tennessee Code Annotated section 39-17-417 within 1,000 feet of a school "shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence." <u>Id.</u>

While the instant appeal was pending, the Tennessee Supreme Court released its opinion in <u>State v. Stanley Bernard Gibson</u>, which held that the Act does not apply to facilitation convictions, overruling prior cases from this Court which held that defendants convicted of facilitation or attempt are to be sentenced pursuant to the Act. <u>State v. Stanley Bernard Gibson</u>, No. M2014-00598-SC-R11-CD, 2016 WL 6778906 (Tenn. Nov. 16, 2016). Accordingly, pursuant to <u>Gibson</u>, the Act no longer applies to the Defendant's facilitation conviction and, therefore, the trial court erred in classifying the Defendant's conviction as a Class B felony and requiring one-hundred percent service of the sentence. <u>Id.</u> at *5-6. Rather, the Defendant's conviction should have been sentenced as a Class C felony, subjecting him to a sentencing range of three to six years as a Range I offender. <u>Id.</u>; <u>see</u> T.C.A. § 40-35-112(a)(3). Additionally, the Defendant's sentence should be modified to reflect thirty percent service of the sentence, rather than one-hundred percent. <u>Stanley Bernard Gibson</u>, 2016 WL 6778906 at *5-6; <u>see</u> T.C.A. § 40-35-501(c).

## <u>CONCLUSION</u>

Upon review, we affirm the Defendant's conviction and remand for resentencing consistent with this opinion.

_____
CAMILLE R. McMULLEN, JUDGE