IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2016

## STATE OF TENNESSEE v. ASHANTI GLASS

**Appeal from the Criminal Court for Knox County
No. 103646   G. Scott Green, Judge**
_____

**No. E2015-01900-CCA-R3-CD – Filed December 29, 2016**
_____

The defendant, Ashanti Glass, was sentenced to fifteen years in confinement after a jury found her guilty of aggravated child neglect pursuant to Tenn. Code Ann. § 39-15-402. On appeal, the defendant argues the evidence was insufficient to support her conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal) and Michael A. Graves, Knoxville, Tennessee (at trial and motion for new trial), for the appellant, Ashanti Glass.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charme P. Allen, District Attorney General; Ashley McDermott and Rachel Russell, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In this case, the two-year-old victim sustained severe burn injuries to her feet at the hands of the defendant, her mother. Though the victim's injuries occurred on December 28, 2013, she did not receive medical treatment until January 11, 2014. Upon her admittance to East Tennessee Children's Hospital, the emergency department physician, Dr. Mary Palmer, recognized immediately that the victim needed to be treated in a burn center. As a result, the victim was transferred to the burn center at Vanderbilt University Medical Center, where she remained for thirteen days.

Prior to being transferred to Vanderbilt, Dr. Palmer, an expert in pediatric emergency medicine, treated the victim. She testified that the victim was in obvious pain when she arrived at the hospital. Though hospital staff provided the victim with morphine and fluids to control her pain, the victim "was really anxious about [hospital staff] approaching her feet, and she kept holding them off the bed." The victim's feet were burned from her toes to the front and the back of her ankles. The bottoms of the victim's feet were not burned. According to Dr. Palmer, when hospital staff asked the victim who burned her feet, "[the victim] stated that [the defendant] did it."

After speaking with the defendant and examining the victim, Dr. Palmer suspected neglect based upon the defendant's time frame of when the victim's injuries occurred and "because of the amount of pain that the child would've been in" after sustaining the burns. She noted that the victim was not walking, "[a]nd by [the defendant's] history she had been pretty much scooting prior to that." Dr. Palmer notified the Department of Children's Services.

Accordingly, Investigator Keith Johnson of the Knoxville Police Department and Travis Bishop of the Department of Children's Services interviewed the defendant on January 11, 2014, and April 25, 2014, regarding the victim's injuries. Investigator Johnson recorded both interviews and portions were played for the jury at trial. Throughout the investigation, it was clear the defendant told several versions of the events that led to the victim's injuries.

The defendant told the investigators that on December 28, 2013, the victim had an accident in the bathroom which left feces on the floor, in the victim's hair, and on the victim's body. As a result, the defendant placed the victim in the bathtub with the water running. The defendant left the victim unattended in the bathtub for two to three minutes. When she came back to the bathroom, the defendant noticed that the water was hot and she took the victim out of the tub. The defendant stated the victim was not crying, but small blisters began to form on the victim's feet.

The day after the incident, the defendant described the victim's blisters as "awful" and "big like a tennis ball." The defendant popped the blisters on the victim's feet and attempted to care for the victim's injuries herself, guided only by a Google search. For the next two weeks, the defendant cleaned the victim's burns with hydrogen peroxide. She also applied Neosporin, Aquaphor lotion, and gauze and bandages to the victim's feet. The defendant never gave the victim any pain relievers. However, when the victim started to scratch her injuries, the defendant gave her Benadryl. On January 11, 2014, at the insistence of the defendant's father, the defendant took the victim to East Tennessee Children's Hospital. The victim was then transferred to Vanderbilt University Medical Center.

2

Carrie Donnell, a pediatric nurse practitioner and an expert in child abuse and neglect, treated the victim when she arrived at Vanderbilt University Medical Center. Ms. Donnell described the victim's injuries as "partial and full thickness burns bilaterally to both feet." According to Ms. Donnell, burns are no longer categorized by degrees, but rather by the depth of the injury to the skin. Here, the victim sustained partial and full thickness burns, which correlate to second- and third-degree burns. The burns covered the dorsal surface, or the top, of the victim's feet, her ankles, and her heels. Ms. Donnell explained that due to the severity of the burns, the victim required oxycodone and opiate pain relievers daily. The victim's wound treatment was so painful, it required sedation in order to "debride the wound and apply medication." The victim underwent skin grafts, applying skin from her thigh "to the dorsal surface of [the victim's] feet, where the full thickness burn was." Photographs of the victim's injuries were taken throughout her treatment, which were entered into evidence at trial. After thirteen days of treatment, the victim was discharged and prescribed outpatient physical therapy and pain medication.

When asked how she was burned, the victim told Ms. Donnell, "My mommy put this in the water." The defendant also provided Ms. Donnell with several different facts regarding the events that led to the victim's injuries. Specifically, the defendant stated that she placed the victim in the bathtub in a seated position without water in it. When the defendant turned on the water, it did not feel hot. The defendant stated she left the bathroom to clean up the victim's accident, and when she returned, she noticed "tiny blisters to her feet." The defendant then removed the victim from the bathtub, despite stating the victim could get in and out of the bathtub independently. The defendant stated that an hour after the bath, the victim's blisters had grown in size. At approximately 8:00 a.m. the following day, the defendant popped the victim's blisters, "applied Neosporin and peroxide to the burns, [and] wrapped them in a bandage and a sock."

Ms. Donnell testified that the defendant's account of how the victim was injured did not correspond with her actual injuries. She explained:

> One of the portions of the history that was inconsistent with the [victim's] injuries was the fact that the [defendant] had stated that she was seated in the tub and playing happily. There – for one, the [victim] who encountered water that was hot enough to scald her feet, burn her feet, to that degree would have absolutely cried out in pain at the time of the injury. And it is not consistent with her being seated in the tub. If she was seated, she would also have burns to her buttocks and probably her hands from trying to push herself up to remove herself from the tub.

3

It would also be expected that a child of her age of 28 months and who [the defendant] reports is able to independently get in and out of the tub would've attempted to exit water that was that hot.

As a result of the investigations, the defendant was arrested and charged with one count of aggravated child abuse and one count of aggravated child neglect. Prior to trial, the State dismissed the aggravated child abuse charge and proceeded to trial under one count of aggravated child neglect.

At trial, the State presented expert testimony from Dr. Palmer and Ms. Donnell regarding the victim's injuries, her subsequent pain, and the effect of the defendant's fourteen-day delay in seeking medical treatment for the victim. Regarding the victim's pain, Ms. Donnell testified that the victim "would've been in pain at the time of the injury, [she] immediately would've screamed out in pain, and then would have continued to be in pain until pain relief was given or she was given treatment as she was at the hospital." Ms. Donnell testified that "[t]he pain might have lessened to some degree over those two weeks, but [the victim] would never have been completely without pain." Finally, Ms. Donnell stated:

> Any time the wounds would have been manipulated in any way, so with any dressing change the [victim] would've been in exquisite pain. And when the [victim] was – attempted to walk or was made to walk or tried to walk [she] would've been in pain. Physically any time the injury was touched or manipulated.

Dr. Palmer testified that medical treatment was necessary for the victim's injuries because of "the risk of infection, [and] the risk of healing with disuse or contractures." She also testified that without proper treatment, the victim's burns would have been "pretty disfiguring," and the victim risked losing mobility in her feet and ankles.

The defendant's sister, Sashay Glass, testified on the defendant's behalf. Ms. Glass stated that the victim seemed "fine" between December 28, 2013, and January 11, 2014. However, Ms. Glass testified that she helped hold the victim while the defendant changed her bandages prior to being taken to the hospital. She confirmed the defendant did not seek medical treatment for the victim until January 11, 2014, and that the defendant initially told her that coffee burned the victim's feet.

The defendant also testified. She stated that she left the victim in the bathtub with the water running for two to three minutes. When she came back to the bathroom, she "checked the water and it was scalding hot to the point where [she] couldn't even put [her] hand in and take the drainer out" and the victim's foot was on the edge of the

4

bathtub. The defendant admitted she lied when she told hospital staff that the victim did not cry or try to get out of the bathtub at the time of the incident. The defendant admitted she lied to Ms. Donnell about the temperature of the water out of fear that the victim would be taken from her.

The jury convicted the defendant of aggravated child neglect. The trial court sentenced the defendant to fifteen years in confinement as a standard offender. On September 3, 2015, the trial court denied the defendant's motion for new trial.

On appeal, the defendant argues that "if the specific act of neglect was in failing to seek professional medical care for the victim sooner than the [d]efendant actually did seek such care, the evidence in this case does not conclusively establish to what extent the injuries suffered by the victim can be attributed to the delay in seeking professional medical care." The State argues that the evidence is sufficient to sustain the defendant's conviction because it reveals the defendant left the victim "in scalding hot water, resulting in second- and third-degree burns for which the defendant did not seek medical treatment for roughly two weeks, during which the child suffered excruciating pain, increased skin thickening and scarring, and potential reduced mobility." After our review, we agree with the State.

## ANALYSIS

The defendant argues that the evidence produced at trial is insufficient to support her conviction for aggravated child neglect. The standard of review when the sufficiency of the evidence is challenged is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). Appellate courts "do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state." *State v. Adams*, 45 S.W.3d 46, 55 (Tenn. Crim. App. 2000) (citing *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). As a result, "'a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts' in the testimony and all reasonably drawn inferences in favor of the State." *State v. Thorpe*, 463 S.W.3d 851, 864 (Tenn. 2015) (quoting *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)).

5

Further, "[a] jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The Tennessee Supreme Court explained as follows:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). On appeal, "conflicts in the testimony are resolved in favor of the verdict of the jury and the judgment of the trial court, and the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914 (citing *Cabbage*, 571 S.W.2d 832).

In count two of the indictment, the defendant is charged with aggravated child neglect. Child neglect exists when the defendant knowingly treats a child "so as to adversely affect the child's health and welfare." Tenn. Code Ann. § 39-15-401(b). Aggravated child neglect is found when the defendant's neglect results "in serious bodily injury to the child." Tenn. Code Ann. § 39-15-402(a)(1). Serious bodily injury "includes, but is not limited to, second- or third-degree burns . . . [and] injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement." Tenn. Code Ann. § 39-15-402(d). When the child is under eight years old, aggravated child neglect is a Class A felony. Tenn. Code Ann. § 39-15-402(b).

After viewing the evidence in the light most favorable to the State, the record supports a finding that the defendant committed aggravated child neglect by her conduct which caused partial thickness and full thickness burns to the victim's feet. Specifically, the defendant placed the victim in a bathtub, turned on the water without checking the temperature, and left the victim unattended in the hot water. As a result of the defendant's actions, the victim was severely burned by the hot water. The defendant recognized that the victim needed medical assistance. But, rather than taking the victim to the hospital, the defendant "Googled" how to care for the victim's wounds. The defendant used Neosporin, bandages and gauze, and lotion to care for the victim's burns. The defendant did not give the victim any pain medication. Medical expert testimony

6

revealed that the victim would have been in extreme pain for the entire two-week period she went without professional medical treatment. Thus, not only did the victim suffer partial and full thickness burns to both feet, she also experienced extreme pain without proper medical treatment for fourteen days.

Further, the evidence shows that during the two week period after the victim was burned, she was unable to walk on her feet. The victim complained of pain in her feet and had to be held down by another adult when the defendant changed her bandages. Despite these indicators that the victim was suffering, the defendant did not seek medical treatment for the victim until January 11, 2014. Upon her arrival at the hospital, it was immediately clear to Dr. Palmer that the victim needed to be transferred to a burn unit and that she was in significant pain. Dr. Palmer and Ms. Donnell opined that the defendant's explanation of how the victim was burned was inconsistent with the victim's injuries. Accordingly, we conclude sufficient evidence exists in the record to support the defendant's conviction of aggravated child neglect.

The defendant, however, argues that the "State's case against [her] on the question of neglect seemed to focus not on any act of neglect in allowing the bath water to become too hot, but rather on the [d]efendant's failure to more quickly seek professional medical care." This argument is not persuasive. Dr. Palmer opined that the defendant's failure to seek medical treatment for two weeks placed the victim at risk for her injuries to become infected, to not heal properly, and to cause immobility.

Here, the evidence supports a finding that multiple instances of neglect causing serious bodily injury to the victim occurred from December 28, 2013, through January 11, 2014. The State is not required to elect a single theory of neglect against the defendant. *State v. Lakeisha M. Watkins*, No. M2009-02607-CCA-R3-CD, 2011 WL 2682173, at *23 (Tenn. Crim. App. July 8, 2011) (citing *State v. Cureton*, 38 S.W.3d 64, 72 (Tenn. Crim. App. 2000)). The parties' closing arguments were not made part of the appellate record, thus we do not know the exact theory argued by the State. However, regardless of the theory relied on by the jury, sufficient evidence exists in the record to sustain the defendant's aggravated child neglect conviction. The defendant's decision to leave the victim in a bathtub unattended, and the defendant's choice to not seek medical treatment for two weeks after the victim was severely burned from the hot water both constitute theories of neglect supported by sufficient evidence in the record. Neither of these theories are inapposite to each other and each supports a finding of aggravated child neglect. The defendant is not entitled to relief.

Finally, the defendant argues she did not knowingly neglect the victim because she "had never encountered burn injuries before" and "she searched the [i]nternet on her phone to try to find out what to do." However, the jury weighed the defendant's

7

testimony regarding her care of the victim's wounds in relation to the other evidence presented at trial and reconciled the evidence in favor of the State. This Court will not reweigh the evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Accordingly, after reviewing the evidence in the light most favorable to the prosecution, we conclude that sufficient evidence exists to support the defendant's conviction for aggravated child neglect.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE